


# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JAMES B. MORAN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 2900 | **DATE** | Jun 9, 2000 |
| **CASE TITLE** | Bennie Cunningham, #A-62152 vs. Officer Eyman, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The plaintiff's motion to correct scrivener's errors [#118] is granted. On the court's own motion, for the reasons set forth in the accompanying Memorandum Opinion and Order, the complaint is dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(6) as barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). The state defendants' motion for summary judgment [#103], the federal defendants' motion for summary judgment [#99], and the plaintiff's discovery-related motions and motions for extensions of time [##93-1, 93-2, 102-1, 105-1, 105-2, 106, and 107] are denied as moot. The plaintiff's motion for sanctions [#121] is denied. The case is terminated. The parties are to bear their own costs.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 0 9 2000 date docketed | |
| ✔ | Docketing to mail notices. | | | 130 |
| ✔ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mjm | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BENNIE CUNNINGHAM, #A-62152 )
)
            Plaintiff, )
)
v. ) 95 C 2900
)
OFFICER STEPHEN EYMAN, et al. )
)
           Defendants. )

**DOCKETED**

JUN 0 9 2000

## MEMORANDUM OPINION AND ORDER

JAMES B. MORAN, Senior District Judge:

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331. The plaintiff claims that the defendants, state correctional officers and federal marshals, violated the plaintiff's constitutional rights by subjecting him to inhumane conditions of confinement. More specifically, the plaintiff alleges that the defendants taunted him and refused to remove his shackles so that he could relieve himself, forcing the plaintiff to urinate and defecate on himself. This matter is before the court for consideration of the defendants' motions for summary judgment. For the reasons stated in this order, the complaint must be dismissed as implicitly challenging the plaintiff's disciplinary conviction.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is



no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988).

## FACTS

The following facts are uncontested for purposes of this motion: The plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. The defendants Stephen Eyman, John Curry, and Stephen Schneider are Stateville correctional officers. The defendants Marguerite Gabele, John O'Malley, Thomas Burke, and Kevin O'Malley are employees of the U.S. Marshal's Service. At the time of the events giving rise to the complaint, the marshals were employed as "lockup" officers at the Dirksen Federal Building in Chicago, Illinois.

On August 9, 1993, the defendant Illinois State correctional officers transported the plaintiff and two fellow inmates from Stateville prison in Joliet, Illinois, to the Dirksen Building in Chicago. The three inmates had been named as witnesses in another prisoner's civil rights trial. The inmates were placed together in a holding cell in the Marshal's lockup and their restraints were removed.

Around lunchtime that day, either state or federal officers brought bag lunches to the three prisoners. At about the same time, U.S. Marshals were delivering hot meals to the federal prisoners housed in the lockup at that time. The three state prisoners asked for a hot meal but the federal officers refused their request. The state officers likewise refused to provide the prisoners with an alternative to the brown bag lunch.

The parties' accounts diverge with respect to what happened next: According to the defendants, when the inmates' request for a different meal was denied, they became irate and began banging on the bars of the cell; the plaintiff allegedly began kicking the metal partition that divided the toilet area from the rest of the cell. The plaintiff, in contrast, maintains that he did not hit, kick, or bang on the bars, and that he kicked the partition only once, in order "to get the guards' attention."

Returning to undisputed facts, later that afternoon, the three prisoners were transferred back to Joliet. They remained at Stateville overnight, and were then brought back to the Dirksen Building the following morning, August 10, 1993.

At some point, the defendant Gabele, in her capacity as Supervisor Deputy U.S. Marshal, ordered that the three inmates be kept in restraints while they were in the holding cell. [The parties dispute whether the inmates' restraints were ever removed that day in the first place]. Gabele states in her affidavit that she based her decision on the plaintiff's "verbal threats to do damage to the cell and his kicking and banging the bars and divider," although the plaintiff insists that he neither vandalized nor threatened to damage the cell.

The state correctional officers did not offer the three inmates lunch until they were in the van on the way back to Joliet around 2:50 p.m. [They assert that they decided not to offer the inmates lunch in their cells again out of fear that the inmates would create a mess.]

Again, the parties' respective accounts largely conflict with each other regarding the circumstances surrounding the plaintiff's relieving himself: The defendant Curry asserts that the plaintiff threatened to "use the hallway floor for a toilet" if his restraints were not removed. The plaintiff denies that charge, insisting that he only requested to have his restraints removed so that he could use the facilities.

The plaintiff indicates that he defecated and urinated on himself and that the urine pooled in the corridor outside his cell; the defendants maintain that the plaintiff intentionally urinated onto the hallway. The defendant John O'Malley marked the puddle with yellow crime scene tape [so that no one would slip in the mess and injure himself, he maintains; to humiliate and degrade the plaintiff, the plaintiff maintains.]

Following the plaintiff's stay in the holding cell, the privacy partition around the toilet had to be re-welded to the wall. The plaintiff denies, however, that he is responsible for the damage, claiming that he could move but little shackled as he was.

After the plaintiff returned to Stateville, disciplinary proceedings were initiated against him. The plaintiff was charged with violations of prison rules 105 (Dangerous Disturbance), 202 (Damage or Misuse of Property), and 402 (Creating a Health, Fire or Safety Hazard). The report read:

> On the above date [August 10, 1993] and approx. time this officer and inmate Cunningham #A62152 on a writ to U.S. District Court C. At approx. 11:30 a.m. inmate Cunningham stood on bench in bull pen and pissed on hallway floor; afterwards he kicked steel divider for approx. 15 min. and call U.S. Marshalls honkies & bitches. He also refused to go to court and would not talk to atty.

In his written statement of defense, the plaintiff admitted having urinated on the floor, but maintained that he was reduced to relieving himself "in an uncivilized manner" because the officers had refused to remove his restraints. The plaintiff further explained that he had balked at going to court because he had soiled himself. Officer Schneider, however, told an investigator that the plaintiff "did not soil his clothing; [rather,] he purposely stood on a bench and pissed on the gallery floor. Report stands true as written."

The Adjustment Committee evidently rejected the plaintiff's account, as they found him guilty of the disciplinary charges. The plaintiff's fellow prisoners in the holding cell faced no discipline following their stay at the Dirksen Building.

## PROCEDURAL BACKGROUND

The plaintiff filed suit on June 15, 1995. On February 14, 1996, following a "Spears" hearing, the court permitted the plaintiff to proceed only on his Eighth Amendment claim against the various state and federal officers at the lockup. All other claims and defendants were dismissed.

Upon review of the parties' summary judgment materials, the court directed the parties to brief whether this case should be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994) as implicitly discrediting the plaintiff's disciplinary conviction.

## DISCUSSION

Summary judgment is inappropriate since material facts are in dispute. Nevertheless, the court concludes that this case must be dismissed because the plaintiff's claims effectively challenge his disciplinary conviction relating to the events at issue. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). This holding has been extended to judgments in prison disciplinary proceedings. *See Edwards v. Balisok*, 520 U.S. 641, 644-45 (1997). The *Heck* rule applies even to claims by inmates who were not deprived of good time credits. *Stone-Bey v. Barnes*, 120 F.3d 718, 721-22 (7th Cir. 1997). Until the sentence has been

invalidated, the cause of action for damages simply "does not accrue." *Heck*, 512 U.S. at 490.

In the case at bar, the defendants maintain that because the plaintiff was so destructive, they made a determination that it was necessary to leave him in restraints so that he could do no more damage to his cell. The defendants further contend that the plaintiff did not soil himself; rather, he stood on a bench and purposefully urinated in the gallery outside his cell. The prison system imposed discipline on the basis of the officers' reports. The plaintiff completely denies the defendants' representations, claiming that he was not destructive and that the pool in the gallery "was a result of what rolled down my leg and went out into the corridor" after the plaintiff was reduced to urinating on himself.

In order for the plaintiff to prevail on his Section 1983 claim, the trier of fact would have to entirely reject the officers' account of the reasons for keeping the plaintiff in shackles and the circumstances surrounding the plaintiff's relieving himself, and thus undermine the factual basis for the plaintiff's disciplinary conviction. *Accord, Crooms v. P.O. Mercado*, 955 F. Supp. 985, 991 (N.D. Ill. 1997); *Jayne v. Kozak*, 10 F. Supp. 2d 1032, 1035 (C.D. Ill. 1998) (plaintiffs' excessive force claims against officers were barred in light of plaintiffs' convictions for assault and/or resisting arrest, since the plaintiffs could not have been convicted if the trier of fact had accepted their version of facts), *relying on Heck*, *inter alia*. In fact, the plaintiff asserts in his affidavit opposing summary judgment that he was "written a false disciplinary report and incident report by defendants Schneider

and Curry to cover up what had happened to [the plaintiff] in the federal lockup." A civil rights action is not the proper vehicle for challenging a criminal conviction. Where, as here, a plaintiff's 1983 claims necessarily imply the invalidity of his disciplinary conviction, he must show that the conviction has been reversed or invalidated before he can proceed on a civil rights claim. Because the plaintiff's disciplinary conviction stands, this court cannot entertain what amounts to a collateral attack against the disciplinary proceedings.

The plaintiff contends that *Heck* does not apply because he does not claim that the disciplinary conviction itself violated his constitutional rights. But the court remains persuaded that this lawsuit would affect the soundness of the plaintiff's disciplinary conviction irrespective of whether he expressly or implicitly challenges the disciplinary action. In *Knowlin v. Thompson*, 207 F.3d 907 (7th Cir. 2000), a Wisconsin prisoner brought a civil rights action against Arkansas law enforcement officers for alleged violations of Arkansas' Uniform Criminal Extradition Act. Even though the plaintiff was not challenging the propriety of his extradition itself, the Seventh Circuit Court of Appeals found that the district court had properly dismissed the suit pursuant to *Heck* because the plaintiff had failed to show he was not, in fact, extraditable through proper procedures.

> It is irrelevant that Knowlin, in his complaint, alleges only that the defendants denied him a procedure guaranteed by federal law; he does not allege that he was innocent of the charges. . . . Rather, *Heck* requires an inquiry into the nature of the allegations and whether the entire claim for damages would, if proven, necessarily imply the invalidity of the conviction or sentence. . . .

*Knowlin*, 207 F.3d at 909. Here, as in *Knowlin*, a finding in favor of the plaintiff on his Eighth Amendment claims would necessarily imply the invalidity of his prison disciplinary conviction, "which *Heck* instructs cannot be shown through a § 1983 suit." *Id. Heck* therefore bars the instant suit.

The plaintiff additionally asserts that *Heck* should not be applied "retroactively." Again, the plaintiff is mistaken. First, the plaintiff initiated this lawsuit on May 15, 1995, almost a year after *Heck* was decided. Although the Seventh Circuit Court of Appeals did not rule until 1996 that the principle of *Heck* applied to prison disciplinary proceedings, *see Miller v. Indiana Dept. of Corrections*, 75 F.3d 330 (7th Cir. 1996), the Court of Appeals noted that it was "clear when *Heck* was decided" that a "rather obvious" *Heck* defense to prisoner civil rights claims existed.

The Court of Appeals for this circuit has not explicitly held that *Heck* is retroactive. Nevertheless, the Supreme Court has decreed that the courts give retroactive effect to every rule of federal law announced by the Court, regardless of whether the events in the lawsuit predate or postdate announcement of the rule. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 95 (1993). Relying on *Harper*, other courts have found that the *Heck* rule applies retroactively to civil rights actions. *See, e.g., Abella v. Rubino*, 63 F.3d 1063, 1064 (11th Cir. 1995); *Stocker v. Hood*, 927 F. Supp. 871, 872 n. 3 (E.D. Penn. 1996).

Although neither set of defendants raised *Heck* in their motions for summary judgment, this case can be distinguished from *Carr v. O'Leary*, 167 F.3d 1124, 1125-27

(7th Cir. 1999), where the State was found to have waived a *Heck* defense. In *Carr*, the disciplinary proceedings themselves were at issue; here, the basic thrust of the third amended complaint is whether the defendants subjected the plaintiff to dehumanizing treatment. The original complaint did challenge the disciplinary proceedings, but the court dismissed that count by Order of February 14, 1996, without applying *Heck* to the plaintiff's collateral conditions claim. The defendants have vigorously defended this case and have filed multiple motions to dismiss, unlike the dilatory attorneys in *Carr*. The defendants undoubtedly relied on the court's order granting the plaintiff leave to proceed *in forma pauperis,* even though on reconsideration the court realizes that it mistakenly allowed the plaintiff's conditions claim to go forward when it so closely related to the subject of the disciplinary proceedings.

The plaintiff also argues that he was not required to exhaust administrative remedies prior to bringing suit. But the plaintiff is confusing the exhaustion issue with the *Heck* requirement that a disciplinary conviction be reversed or invalidated before a court can consider whether a constitutional violation occurred. The plaintiff's claims are not being dismissed for failure to exhaust administrative remedies; rather, the court is dismissing his claims because were the plaintiff to succeed, the result would be a direct conflict between a state "conviction" and a federal judgment that the conviction was flawed–exactly what the Supreme Court intended to proscribe in *Heck*.

Finally, it should be noted that the plaintiff is under the impression that he has been permitted to proceed on an additional claim that he was denied lunch one day. The court does not share the plaintiff's reading of the magistrate judge's report and recommendation dated December 13, 1995. It is well established that prison officials must provide for inmates' basic human needs. *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999). The denial of food can violate the Constitution, depending on the amount and duration of the deprivation. *Id.* at 853-54. But while the systematic malnourishment of a prisoner could constitute cruel and unusual punishment, the occasional missed meal does not. *Morrison v. Martin*, 755 F. Supp. 683, 686 (E.D. N.C.), *aff'd* 917 F.2d 1302 (4th Cir. 1990). Going without food until mid-afternoon–or even missing lunch altogether one day–does not approach the level of an Eighth Amendment violation. At any rate, the meal issue is also directly related to the disciplinary charges, since the defendants indicate that they withheld the meal at the lockup on account of the inmates' alleged rebellion over the food the previous day.

In sum, the plaintiff contends that essentially the defendants' entire accounts of the relevant events of August 9 and 10, 1993 [and hence, the disciplinary charges themselves] are false. The plaintiff asserts that he did not become irate and destructive and that the defendants gratuitously used restraints only to degrade him and perhaps to discourage him from testifying against a fellow officer in another prisoner's civil rights case. This lawsuit is therefore tantamount to an attack on the validity of the plaintiff's disciplinary

convictions for creating a dangerous disturbance, damaging property, and creating a health, fire or safety hazard. The court cannot consider the substantive merits of the plaintiff's Eighth Amendment claim without re-examining the validity of his underlying disciplinary conviction. The complaint must accordingly be dismissed. The plaintiff's various motions to strike pleadings and motions, to compel responses to discovery requests, for sanctions, and for extensions of time in which to respond to the [fully briefed] motions for summary judgment, are denied as moot.

If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C); *Hyche v. Christensen*, 170 F.3d 769, 771 (7th Cir. 1999). If the plaintiff does choose to appeal, he will be liable for the $105 appellate filing fee irrespective of the outcome of the appeal. *Newlin v. Helman*, 123 F.3d 429, 434 (7th Cir. 1997). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may be assessed a "strike" for purposes of 28 U.S.C. § 1915(g).

IT IS THEREFORE ORDERED that the plaintiff's motion "to correct scrivener's errors" (docket #118) in the third amended complaint is granted. The court has considered the plaintiff's corrections and modifications in reviewing the third amended complaint.

IT IS FURTHER ORDERED, on the court's own motion, that the complaint is dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(6) as barred by the doctrine

of *Heck v. Humphrey*, 512 U.S. 477 (1994). The case is terminated. The parties are to bear their own costs.

IT IS FURTHER ORDERED that the state defendants' motion for summary judgment (#103), the federal defendants' motion for summary judgment (#99), and the plaintiff's discovery-related motions and motions for extensions of time (##93-1, 93-2, 102-1, 105-1, 105-2, 106, and 107) are denied as moot.

IT IS FURTHER ORDERED that the plaintiff's motion for sanctions (#121) is denied.

                                          */s/ James B. Moran*
                                              James B. Moran

                                        Senior Judge, United States District Court

Dated: 6/9/00